903 So.2d 1011 (2005)
DEPARTMENT OF CHILDREN AND FAMILIES, Petitioner,
v.
Robert CLEM, Respondent.
No. 5D05-905.
District Court of Appeal of Florida, Fifth District.
June 10, 2005.
*1012 Ralph J. McMurphy, Department of Children and Families, Wildwood, for Petitioner.
No Appearance for Respondent.
ORFINGER, J.
The Florida Department of Children and Families (DCF) seeks certiorari review of the trial court's amended order determining that Robert Clem is incompetent to stand trial and committing him to DCF's custody. Though not a party below, DCF has standing to seek certiorari review of the trial court's order. See Dep't of Children & Families v. Harter, 861 So.2d 1274 (Fla. 5th DCA 2003). For the reasons expressed below, we deny the petition.
Clem was charged with burglary of a dwelling and grand theft. Pursuant to Florida Rule of Criminal Procedure 3.210, his counsel filed a motion, questioning Clem's competency to stand trial. The trial court appointed three experts to evaluate Clem. While all of the experts agreed Clem suffers from serious mental disorders, only one, Dr. David Bortnick, concluded Clem was incompetent to proceed.
Dr. Bortnick opined that Clem's appreciation of the charges against him is "questionable," that he does not appreciate the *1013 nature of possible penalties against him, that he does not understand the adversary nature of the legal process, that his capacity to disclose relevant facts is questionable, and that he lacks the ability to testify relevantly, in that he "doesn't know what he would saythe Court is a scary, spooky place." Dr. Bortnick concluded:
Robert Clem is incompetent to proceed at trial and was probably insane at the time of the alleged offenses. He is mentally retarded, cognitively impaired, suffers from a severe mental disorder, was not taking his medication at the time of the alleged offenses and may have been under the influence of auditory hallucinations. He was "drunk and high[,]" which probably exacerbated his intellectual and cognitive defectshe meets the statutory criteria for "insanity" at the time of the alleged offenses and may benefit from treatment in a psychiatric facility.
After reviewing the experts' reports, the trial court determined that Clem was incompetent to stand trial and committed him to DCF for treatment. DCF now seeks certiorari review of the trial court's order.
DCF first argues that the trial court's order constitutes a departure from the essential requirements of law because there was no competent substantial evidence to support the trial court's determination that Clem was incompetent to proceed. DCF's argument fails for two reasons. First, it is doubtful that we have certiorari jurisdiction to decide whether the trial court's determination was supported by competent substantial evidence. See Chicken `N' Things v. Murray, 329 So.2d 302 (Fla.1976) (certiorari is a means for review and correction of jurisdictional or other equally fundamental irregularities, and is not proper procedure for challenging findings of fact, unless fact-finding process has been marred by a departure from essential procedural requirements). Second, while DCF acknowledges in its petition that Dr. Bortnick found that Clem was incompetent to proceed, it argues that Dr. Bortnick's opinion, standing alone, is insufficient to support the trial judge's order. We disagree. Contrary to DCF's position, nothing in the statutes requires that a majority of the appointed experts find the accused incompetent to stand trial. See §§ 916.115, 916.12, & 916.13, Fla. Stat. (2003). In addition, we are not entitled to reweigh the evidence. See, e.g., Tsavaris v. NCNB Nat'l Bank of Fla., 497 So.2d 1338 (Fla. 2d DCA 1986).
DCF next argues that there was no evidence that Clem could be treated by DCF in order to restore his competency for purposes of section 916.13(1). DCF points out that none of the three experts, including Dr. Bortnick, made any findings to support the trial court's conclusion that Clem's condition necessitated involuntary commitment to DCF under the standards of section 916.13(1). DCF correctly observes that neither Dr. Krop nor Dr. Honickman included such findings in their report since they both determined that Clem was competent to proceed. However, it urges that since Dr. Bortnick opined that Clem was incompetent, he should have "included specific findings regarding the possibility of restoring him to competency, the treatment that was needed to restore competency and the need for a secure or less restrictive commitment." See § 916.12(4), Fla. Stat. (2003).
Section 916.12(4) provides:
(4) If the experts should find that the defendant is incompetent to proceed, the experts shall report on any recommended treatment for the defendant to attain competence to proceed. In considering the issues relating to treatment, *1014 the examining experts shall specifically report on:
(a) The mental illness causing the incompetence;
(b) The treatment or treatments appropriate for the mental illness of the defendant and an explanation of each of the possible treatment alternatives in order of choices;
(c) The availability of acceptable treatment and, if treatment is available in the community, the expert shall so state in the report; and
(d) The likelihood of the defendant's attaining competence under the treatment recommended, an assessment of the probable duration of the treatment required to restore competence, and the probability that the defendant will attain competence to proceed in the foreseeable future.
§ 916.12(4), Fla. Stat. (2003).
Dr. Bortnick's report did not specifically address the criteria set forth in section 916.12(4). Dr. Bortnick merely stated that Clem "may benefit from treatment in a psychiatric facility." However, DCF overlooks another provision of the statute, section 916.13(2), which states:
(2) A defendant who has been charged with a felony and who has been adjudicated incompetent to proceed, and who meets the criteria for commitment to the department under the provisions of this chapter, may be committed to the department, and the department shall retain and treat the defendant. No later than 6 months after the date of admission or at the end of any period of extended commitment, or at any time the administrator or designee shall have determined that the defendant has regained competency to proceed or no longer meets the criteria for continued commitment, the administrator or designee shall file a report with the court pursuant to the applicable Florida Rules of Criminal Procedure.
§ 916.13(2), Fla. Stat. (2003).
Under the plain terms of section 916.13(2), if at any time the administrator of a treatment program determines that a criminal defendant no longer meets the criteria for continued placement, the administrator is to file a report with the trial court. Consequently, although Dr. Bortnick's report should have addressed the criteria set forth in section 916.12(4) in more detail, the fact remains that in light of section 916.13(2), DCF cannot tenably argue that the trial court's order causes it irreparable harm for purposes of certiorari since under this provision, the administrator of Clem's treatment program may file a report with the trial court upon determining that Clem "has regained competency to proceed or no longer meet the criteria for continued commitment" and the order itself contemplates a hearing within six months. Certiorari is not available when there is no irreparable harm or the petitioner has another remedy. See Nussbaumer v. State, 882 So.2d 1067 (Fla. 2d DCA 2004) (to determine if court has certiorari jurisdiction, court must first decide whether petitioner has demonstrated that order creates irreparable harm); Zabawa v. Penna, 868 So.2d 1292 (Fla. 5th DCA 2004) (as a condition precedent to invoking certiorari jurisdiction of court, petitioner must establish it has suffered an irreparable harm).
CERTIORARI DENIED.
PLEUS and PALMER, JJ., concur.